UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MARY SHEPHEARD, )
)
        Plaintiff, )
)
v. ) No. 1:22-cv-310-DCP
)
COMMISSIONER OF SOCIAL SECURITY, )
)
        Defendant. )

**MEMORANDUM OPINION**

    This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 19]. Now before the Court is Plaintiff's Motion for Judgment on the Administrative Record [Doc. 15]. Mary Shepheard ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant Commissioner of Social Security ("Commissioner"). For the reasons that follow, the Court **DENIES** Plaintiff's Motion [Doc. 15] and **AFFIRMS** the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

    On August 28, 2018,[1] Plaintiff submitted an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, 1381 *et seq.* [Tr. 265–78]. Plaintiff claimed a period of disability that began October 1, 2017 [*Id.* at 265, 269]. After her applications were denied initially [*id.* at 167–70] and on

---

[1]    Plaintiff [Doc. 16 p. 1], the Commissioner [Doc. 18 p. 1], and the ALJ [Tr. 15] all state that Plaintiff filed her application on August 23, 2018. However, the record reflects that Plaintiff's application was completed on August 28, 2018 [*Id.* at 265]. *See* 20 C.F.R §§ 404.614, 416.325 (stating a claimant's application is generally considered filed on the date it is received by the Administration).

reconsideration [*id.* at 174–79], Plaintiff requested a hearing before an ALJ [*id.* at 185–86]. A hearing was held on April 23, 2020 [*id.* at 66–89] and July 29, 2021 [*id.* at 35–59] before ALJ Michael L. Brownfield (hereinafter "the ALJ"). On January 14, 2022, the ALJ found that Plaintiff was not disabled [*Id.* at 12–34]. Plaintiff requested the Appeals Council review the ALJ's decision [*id.* at 172–73] which was denied [*id.* at 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on December 12, 2022 [Doc. 1]. Plaintiff filed a Motion for Judgment on the Administrative Record [Doc. 15] and accompanying memorandum [Doc. 16]. The Commissioner filed a Brief in response [Doc. 18] to Plaintiff's motion. Plaintiff did not reply, making this matter ripe for adjudication.

## II.  DISABILITY ELIGIBILITY AND ALJ FINDINGS

### A.  Disability Eligibility

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> [I]f his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

### B. The ALJ's Findings

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2022.

3

2. The claimant has not engaged in substantial gainful activity since October 1, 2017, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 *et seq.*).

3. The claimant has the following severe impairments: lumbar disc disease, schizoaffective disorder, bipolar disorder, post-traumatic stress disorder, asthma/chronic obstructive pulmonary disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally lift and carry up to 50 pounds, frequently lift and carry up to 20 pounds, continuously lift and carry up to ten pounds; sit five out of eight hours per day but not continuously for more than one hour without change in postural position, remaining on task at all times; stand three out of eight hours per day but no more than 15 minutes continuously without change in postural position, remaining on task at all times; walk two out of eight hours per day but no more than ten minutes continuously without change in postural position, remaining on task at all times; frequently reach in all directions, handle, finger, feel, push, and pull; occasionally operate foot or leg controls; occasionally climb stairs, ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; no concentrated exposure to pulmonary irritants; no more than occasional exposure to extreme cold, extreme heat, humidity, operation of a motor vehicle, and work around unprotected heights and moving mechanical parts; can perform work involving simple, routine job tasks and occasional contact with the general public, coworkers, and supervisors; can concentrate to perform simple, routine job tasks; is limited to jobs in which changes in work procedures would be infrequent and gradually introduced; and would work best in jobs that deal primarily with objects and not people.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 1, 1968 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

4

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 18–26].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762,

5

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

6

IV.  ANALYSIS

Plaintiff presents two issues on appeal [Doc. 16 pp. 8–14]. First, Plaintiff argues that the ALJ's RFC was inconsistent because it limited Plaintiff to light work but provided exceptions consistent with medium work [*Id.* at 8–10]. Second, Plaintiff argues that the ALJ improperly evaluated Dr. Daniel Picard's ("Dr. Picard") medical opinion [*Id.* at 10–14].[2] The Commissioner responds that there is no reversible error because the ALJ's RFC was supported by substantial evidence and "the ALJ's step five finding involved only light exertional occupations" [Doc. 18 p. 8 (citing Tr. 26)]. Further, the Commissioner argues that the ALJ found that Dr. Picard's answers to the medical interrogatory did not constitute a medical opinion, and his decision was otherwise supported by substantial evidence [*Id.* at 6]. The Court will address each of Plaintiff's arguments in turn and then will discuss specifically whether the ALJ's decision was supported by substantial evidence. For the reasons more fully explained below, the Court finds that the Commissioner's decision should not be disturbed.

A.  The ALJ's Consideration of Plaintiff's Limitations

Plaintiff argues that the ALJ's RFC is internally inconsistent with respect to her physical limitations because (1) he limited her to light work but found she could lift/carry up to fifty pounds which "significantly exceeds the lifting limitation for light work" [Doc. 16 p. 9]; and (2) limited Plaintiff to occasional stooping "which is incompatible with the definition of medium work" [*id.* (citing Tr. 20)]. The Commissioner responds that there was no reversible error because (1) the ALJ's RFC determination was supported with substantial evidence, including Dr. Stephen

---

[2]  Plaintiff's brief initially states that the ALJ's opinion "relies upon an improper evaluation of the opinion of impartial medical expert, John Goff, Ph.D" [Doc. 16 p. 9]. As the Commissioner points out [Doc. 19 p. 5 n.2], Plaintiff's reference to Dr. Goff appears to be a typo as she does not otherwise reference Dr. Goff's opinion throughout her brief. Instead, Plaintiff discusses the ALJ's evaluation of Dr. Picard's opinion [Doc. 16 pp. 10–14]. Therefore, the Court has addressed Plaintiff's argument as it pertains to Dr. Picard, not Dr. Goff.

7

Goewey's ("Dr. Goewey") opinion [Doc. 18 pp. 6–8]; and (2) the ALJ asked the vocational expert whether an individual with the Plaintiff's age, education, work experience, and RFC could perform work that existed in the national economy [*id.* at 8]. The Court finds that the ALJ's RFC determination was not inconsistent.

The RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Where a claimant's RFC falls between two exertional ranges, Social Security Ruling 83-12 acts as guidance for the hearing officer and states that the ALJ "will need to consult a vocational resource." SSR 83-12, 1983 WL 31253, at *2 (S.S.A.). The Ruling provides the following example:

> In some instances, an individual can do a little more or less than the exertion specified for a particular range of work; e.g., the person . . . can fully meet the exertional demands of light work and can also perform part of the greater lifting requirement of medium work (such as up to 30 pounds at a time rather than 50 pounds at a time).

*Id.* at *1.

Such is the case here. The ALJ found Plaintiff is capable of light work, which "requires a person to be on their feet for 2.67-5.33 hours in a day, while lifting and carrying up to 10 pounds in that time." *Elias v. Comm'r of Soc. Sec.*, No. 17-14033, 2019 WL 1415489, at *7 (E.D. Mich. Jan. 26, 2019) (citing SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983)), *report and recommendation adopted*, No. CV 17-14033, 2019 WL 1399944 (E.D. Mich. Mar. 28, 2019); *see also* 20 C.F.R. § 220.132 (defining light work as work requiring "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). But the ALJ also provided an exception for lifting which falls within the medium exertional level, stating "she can occasionally lift and carry up to 50 pounds, frequently lift and carry up to 20 pounds, continuously lift and carry up to ten pounds" [Tr. 20]. "Medium work involves lifting no more

8

than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."
20 C.F.R. § 220.132.

Thus, Plaintiff's RFC is between light and medium exertional level work.[3]  "[N]ot all individuals fall into single categories.  Sometimes a claimant falls between two 'ranges of work,' such as when someone 'can perform more than light but less than medium work.'" *Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 48 (6th Cir. 2018) (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 2 § 200.00(d)).  "In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, . . . [vocational expert] assistance is advisable[.]" SSR 83-12, 1983 WL 31253, at *3 (Jan. 1, 1983)[4]; *see also Blackburn*, 748 F. App'x at 48 (finding when claimants fall in between two ranges of work "an administrative law judge consults vocational experts with 'specialized knowledge' to make an informed decision about what jobs a claimant can do").

In this case, the ALJ appropriately followed this process.  The ALJ first determined Plaintiff's RFC, finding Plaintiff capable of light work "except she can occasionally lift and carry up to 50 pounds . . . stand three out of eight hours per day . . . [and] walk two out of eight hours per day" [Tr. 20–21].  The ALJ also found that Plaintiff had no past relevant work [*Id.* at 25].

---

[3]  Plaintiff also argues that the ALJ limited her to occasional stooping which is consistent with light work but inconsistent with medium work [Doc. 16 pp. 9–10]. *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) (finding that medium work "usually requires frequent bending-stooping").  The Court finds that the ALJ properly limited Plaintiff to light exertional work and therefore accounted for the difference between stooping involved in medium work and Plaintiff's capabilities.

[4]  Social Security Ruling 83-12's purpose is to clarify the policies in "Appendix 2 of Subpart P of the regulations as a framework for adjudicating claims in which an individual has only exertional limitations, and no specific rule applies because the individual's [RFC] does not coincide with any one of the defined exertional ranges of work." SSR 83-12, 1983 WL 31253, at *1 (Jan. 1, 1983).

9

Based on these findings, Plaintiff's physical capabilities fell between light and medium work as defined by the Social Security Regulations. *See* 20 C.F.R. § 220.132. Accordingly, at the July 29, 2021 hearing, the ALJ appropriately sought the vocational expert's ("VE") assistance, asking the following question:

> I'd like you to assume a hypothetical individual of the Claimant's age, education, and vocational background. Assume that such individual is capable of performing work activities as follows.
>
> They could occasionally lift objects and carry objects weighing up to 50 pounds, frequently lift objects and carry objects weighing up to 20 pounds, continuously lift and carry objects weighing up to 10.
>
> Such individual would be capable of sitting for accumulative total of five out of eight hours per day, but could not stand more than one hour continuously without changing postural position remaining on-task at all times.
>
> Such individual could stand accumulative total of three out of eight hours per day, but . . . could not stand continuously for greater than 15 minutes without a change in postural position remaining on-task at all times.
>
> Such individual could walk accumulative total of two out of eight hours per day but could not walk continuously for more than 10 minutes without a change in postural position, again, remaining on-task at all times.
>
> . . .
>
> Would there be . . . jobs that could be performed, and if so, would you identify representative examples?

[Tr. 54–55]. The VE responded: "Based on the five out of eight hours of standing and walking, that would be limiting work activities to a reduced number of light jobs. I can give examples of light unskilled work that would fit that hypothetical" [*Id.* at 55].

In applying Social Security Ruling 83-12, the ALJ relied on VE testimony to determine Plaintiff's capabilities. *See* SSR 83-12, 1983 WL 31253, at *3 (Jan. 1, 1983). The ALJ further discussed this process in his decision citing specifically to 20 C.F.R. § Pt. 404, Subpt. P, App. 2 and stating: "To determine the extent to which these limitations erode the unskilled light

10

occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity" [Tr. 26]. He concluded: "Based on the testimony of the vocational expert, . . . [and] considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" [*Id.*]. To the extent Plaintiff asserts that she is unable to perform work at the medium exertion level, the ALJ's finding at step five only included light exertional work. Thus, there is no reversible error, and the Court finds that the ALJ's RFC determination was not inconsistent but rather complied with the requirements of the regulations.

> **B.    The ALJ's Consideration of Dr. Picard's Opinion**

Plaintiff argues that the ALJ did not explain the inconsistency between Dr. Picard's opined limitation regarding Plaintiff's "ability for prolonged gait" and the ALJ's RFC and rejected Dr. Picard's opinion without analyzing it for supportability and consistency [Doc. 16 p. 12–13]. The Commissioner responds that the ALJ properly analyzed Dr. Picard's opinion and determined it did "not meet the definition of a 'medical opinion'" and therefore the ALJ was not required to analyze the opinion for consistency and supportability [Doc. 18 p. 6]. The Court finds that the ALJ properly determined that Dr. Picard's responses did not constitute a medical opinion.

Dr. Picard is a medical expert who, at the Agency's request, proffered responses to a medical interrogatory entitled "Medical Statement of Ability to Do Work-Related Activities (Physical)" [Tr. 1448–58]. With regard to Plaintiff's ability to lift and carry, he did not check the boxes representing the amount she could lift and carry but instead wrote "not specified in records, but diagnosis may limit above activities significantly" [*Id.* at 1452]. When asked to check how many hours Plaintiff can sit, stand, and walk at one time without interruption and in total in an

11

eight-hour day, Dr. Picard did not check the boxes but instead wrote: "Not specified in records, but diagnosis listed may limit prolonged standing and walking significantly" [*Id.* at 1453]. Dr. Picard provided similar answers throughout the form including that Plaintiff's diagnoses "may lead to" a limitation of pushing and pulling; "may lead to operation of foot control to be inaccurate and unsafe"; "may lead to significant limitations of [postural activities]"; and "may make exposure to unprotected heights or moving parts, or operating motor vehicle, to be unsafe[, and] vibrations may worsen symptoms" [*Id.* at 1454–56]. The ALJ found Dr. Picard's responses "not persuasive because they fail to specify work-related limitations except in vague terms that . . . are not clearly inconsistent with the residual functional capacity" [*Id.* at 24–25].

A medical opinion is "a statement from a medical source about what [the claimant] can still do despite [his/her] impairment(s) and whether [the claimant] has one or more impairment-related limitations or restrictions" in the ability to perform physical, mental, and other demands of work activities, as well as the ability adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). In this case, Dr. Picard "never alluded to any particular abilities or restrictions that were imposed by Plaintiff's impairments." *Ryant v. Saul*, No. CV 1:19-2377, 2020 WL 5128492, at *11 (D.S.C. July 30, 2020), *report and recommendation adopted*, No. 1:19-02377, 2020 WL 5107552 (D.S.C. Aug. 31, 2020). Instead, Dr. Picard found that Plaintiff's diagnoses could, may, or otherwise had the possibility of impacting her ability to perform work-related activities, but did not determine Plaintiff's specific abilities or restrictions. Therefore, Dr. Picard's responses did not constitute a medical opinion under the regulations because they were not indicative of what Plaintiff "can still do despite [her] impairment(s) and whether [Plaintiff has] one or more impairment-related limitations or restrictions" related to work-activities. 20 C.F.R. § 404.1513(a)(2). As such, the ALJ was not required to analyze Dr. Picard's opinion for consistency

and supportability as he did for the medical opinions on the record. *Id.*; *see also Harper v. Comm'r of Soc. Sec.*, No. 5:21-CV-01078, 2022 WL 3028094, at *2–3 (N.D. Ohio Aug. 1, 2022) ("Dr. Offutt's failure to specify any work activity [plaintiff] could still do despite her impairments is reason enough to conclude that the information provided by Dr. Offutt is not a medical opinion according to the applicable regulations. . . . Given this conclusion, the ALJ was not required to specifically articulate how persuasive she found Dr. Offutt's statement."). Further, Dr. Picard's statements are not inconsistent with the ALJ's RFC because they do not express a concrete limitation or opinion. *See Kreilach v. Comm'r of Soc. Sec.*, 621 F. Supp. 3d 836, 845–46 (N.D. Ohio Aug. 15, 2022) (finding that the ALJ was not required to explain his omission of an opined limitation at issue because it was not a concrete, specific limitation and there was not substantial evidence in the record to support the opined limitation).

### C. Substantial Evidence

The ALJ's RFC was otherwise supported by substantial evidence, particularly Dr. Goewey's opinion [Tr. 1459–69]. Plaintiff was referred to Dr. Goewey for a consultative exam. Dr. Goewey concluded that Plaintiff could: lift/carry up to fifty pounds occasionally, twenty pounds frequently, and ten pounds continuously [*id.* at 1461]; sit for three hours in an eight-hour workday for one hour without interruption, stand for three hours in an eight-hour workday for fifteen minutes at a time, and walk for two hours in an eight-hour workday for ten minutes at a time [*id.* at 1462]; frequently perform reaching in all directions, handling, fingering, feeling, pushing and pulling [*id.* at 1463]; occasionally climb stairs, ramps, ladders, or scaffolds, balance, stoop, kneel, crouch, and crawl [*id.* at 1464]; occasionally tolerate exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, extreme cold and heat, never be exposed to dust, odors, fumes and other pulmonary irritants, and frequently be exposed

13

to vibrations [*id.* at 1465]. The ALJ found Dr. Goewey's opinion to be "most persuasive" [*id.* at 25] and adopted almost all of Dr. Goewey's findings when formulating his RFC determination which stated:

> [Plaintiff] can occasionally lift and carry up to 50 pounds, frequently lift and carry up to 20 pounds, continuously lift and carry up to ten pounds; sit five out of eight hours per day but not continuously for more than one hour without change in postural position, remaining on task at all times; stand three out of eight hours per day but no more than 15 minutes continuously without change in postural position, remaining on task at all times; walk two out of eight hours per day but no more than ten minutes continuously without change in postural position, remaining on task at all times; frequently reach in all directions, handle, finger, feel, push, and pull; occasionally operate foot or leg controls; occasionally climb stairs, ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; no concentrated exposure to pulmonary irritants; no more than occasional exposure to extreme cold, extreme heat, humidity, operation of a motor vehicle, and work around unprotected heights and moving mechanical parts.

[*Id.* at 20–21]. In finding Dr. Goewey's opinion persuasive, the ALJ considered the factors of consistency and supportability. The factor of supportability refers to evidence that supports the medical opinion, "particularly medical signs and laboratory findings." 20 C.F.R. § 404.1527. Consistency refers to evidence otherwise on the record that corroborates the medical opinion. *Id.* The ALJ noted that Dr. Goewey's "report documents clinical abnormalities that support the limitations he specified" which goes to the factor of supportability [Tr. 25]. The ALJ also noted that Dr. Goewey's opinion "is reasonably consistent with substantial other evidence of the record. . . which does not support great limitation" which pertains to the consistency factor [*Id.*]. Therefore, the Court finds that the ALJ's RFC was supported by substantial evidence on the record.

14

## V. CONCLUSION

Based on the foregoing, the Court will **DENY** Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 15**] and will **AFFIRM** the Commissioner's decision.

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge